UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO.: 3:17-cv-167-J-20PDB

2017 FEB 13 PM 12:16
FILED

ARLENE SCHRETZMANN LAVIGNE,
as guardian of KURT SCHRETZMANN,
and a/a/o LUCINDA ROSANA POPE,

Plaintiff,

vs.

SAFECO INSURANCE COMPANY
OF ILLINOIS,

Defendant.
_______________________________/

**COMPLAINT**

The plaintiff, ARLENE SCHRETZMANN LAVIGNE, as guardian of KURT SCHRETZMANN, and as assignee of LUCINDA ROSANA POPE, by and through her undersigned attorneys, sues the defendant, SAFECO INSURANCE COMPANY OF ILLINOIS, and alleges:

**GENERAL ALLEGATIONS**

1. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00), excluding costs, interest and attorney's fees.

2. The plaintiff, ARLENE SCHRETZMANN LAVIGNE (hereinafter, "LaVigne") is a citizen of the State of South Carolina, and she is a resident of and domiciled in Florence County, South Carolina.

3. LaVigne is the legal guardian of KURT SCHRETZMANN (hereinafter, "Schretzmann"), pursuant to the March 26, 2010 order appointing limited guardian of person and property and any subsequent proceedings and orders in Case Number 10-CP-330 in the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida, and in Case Number 11-26 GR in the Circuit Court of the Third Judicial Circuit, in and for Columbia County, Florida, where the guardianship matter was subsequently transferred.

4. Schretzmann is a citizen of the State of Florida, and he is a resident of and domiciled in Columbia County, Florida.

5. LaVigne (as guardian for Schretzmann) is the assignee of the certain rights of LUCINDA POPE (hereinafter, "Pope"), based on the Settlement Agreement and Stipulated Judgment (hereinafter, "Settlement Agreement") attached hereto as **Exhibit 1.**

6. Pope is a citizen of the State of Florida, and she is a resident of and domiciled in Columbia County, Florida.

7. The defendant, SAFECO INSURANCE COMPANY OF ILLINOIS (hereinafter, "Safeco"), is a citizen of the State of Illinois, being an Illinois corporation with its principal place of business in DuPage County, Illinois.

8. Safeco is a foreign corporation that is licensed to do business as an insurance company in Florida.

9. Safeco is engaged in the business of issuing policies of motor vehicle insurance in and about the State of Florida, including, but not limited to Columbia County, Florida.

10. The parties have stipulated to the personal jurisdiction of this Court and to venue in the Middle District of Florida, Jacksonville Division.

11. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332.

12. Safeco issued a written automobile liability insurance policy to Pope, Policy Number X5404529, which was in full force and effect from February 17, 2009 through August 17, 2009 (hereinafter, the "Policy").

13. A copy of the Policy is attached hereto as **Exhibit 2.**

14. The Policy provided bodily injury liability limits of $10,000.00 per person and $20,000.00 per occurrence, and property damage limits of $10,000.00.

15. On April 24, 2009, while the Policy was in full force and effect, Pope caused a collision between the automobile she was operating and the motorcycle being ridden by Schretzmann, as a result of which Schretzmann suffered significant injuries.

16. Pursuant to the terms of the insurance contract, Pope was insured under the Policy and had liability coverage for the injuries she caused to Schretzmann.

17. On or about May 1, 2009, while Schretzmann was in a coma, Safeco attempted to tender its bodily injury policy limits to Schretzmann on behalf of Pope, and required Schretzmann to execute a general release (releasing both bodily injury and property damages claims) in exchange for the same. A copy of the May 1, 2009 correspondence and the May 7, 2009 check are attached hereto as composite **Exhibit 3.**

18. At the time of Safeco's May 1, 2009 tender and request for a release, Schretzmann was physically and mentally incapable of accepting the tender or executing the release requested by Safeco.

19. At the time of Safeco's May 1, 2009 tender and request for a release, Safeco knew that Schretzmann was physically and mentally incapable of accepting the tender or executing the release requested by Safeco.

20. On June 18, 2009, as Schretzmann remained hospitalized with a traumatic brain injury and continued to lack any legal capacity, Schretzmann's family asked Safeco to retain an attorney to establish a guardianship for Schretzmann so that Schretzmann's claims against Pope arising out of the accident could be resolved.

21. A copy of the June 18, 2009 letter requesting Safeco to establish the guardianship is attached as **Exhibit 4.**

22. On or about July 17, 2009, Safeco refused to establish a guardianship for Schretzmann to facilitate a settlement for Pope, unless Safeco's cost for doing so would be limited to four hundred dollars ($400.00).

23. Safeco knew that establishing a guardianship for Schretzmann could not be achieved for $400.00.

24. On July 29, 2009, while Schretzmann remained hospitalized with a traumatic brain injury and continued to lack any legal capacity, Safeco again attempted to tender its policy limits to Schretzmann on behalf of Pope, and again required Schretzmann to execute a general release (releasing both bodily injury and property damages claims) in exchange for the same.

25. Safeco sent the July 29, 2009 tender and request for execution of a release to Schretzmann's home, even though Safeco knew that Schretzmann was still hospitalized and incapacitated at that time.

26. A copy of the July 29, 2009 correspondence and July 30, 2009 check from Safeco to Schretzmann are attached hereto as composite **Exhibit 5**.

27. On August 31, 2009, Safeco reiterated that it would only pay between $200 and $400 to set up a guardianship for Schretzmann, even though Safeco knew that this amount was inadequate.

28. On September 3, 2009, Schretzmann's family asked Safeco to advise when it had retained an attorney in the Tampa area (where Schretzmann remained hospitalized) who would set up a guardianship for Schretzmann for $400.

29. On September 3, 2009, Schretzmann's family asked Safeco to advise its insured (Pope) of the request for the establishment of the guardianship so that Schretzmann's claims against her could be addressed, along with Safeco's response to that request.

30. A copy of the email chain including both the August 31, 2009 email from Safeco and the September 3, 2009 email to Safeco is attached hereto as **Exhibit 6**.

31. Safeco failed to respond to the September 3, 2009 email with any information regarding an attorney who would be willing to establish the guardianship of Schretzmann for $400.

32. Safeco failed to retain any counsel for the establishment of a guardianship so as to facilitate a settlement with Schretzmann and a release for its insured, Pope.

33. On or about February 24, 2010, while Schretzmann remained hospitalized with a traumatic brain injury and continued to lack any legal capacity, Safeco again attempted to tender its policy limits to Schretzmann on behalf of Pope, and required Schretzmann to execute an even more extensive release which still included Schretzmann's unresolved property damage claims in exchange for the tender of just the bodily injury limits of liability.

34. At the time of the February 24, 2010 tender and request for a release, Safeco knew that Schretzmann remained hospitalized with a traumatic brain injury and that Schretzmann lacked the legal capacity to accept the tender or execute a release.

35. Safeco addressed the February 24, 2010 tender and request for a release to Schretzmann's home in Lake City, Florida, even though Safeco knew that Schretzmann remained hospitalized at the James A. Haley Veteran's Hospital Traumatic Brain Injury Unit in Tampa, Florida.

36. On or about March 22, 2010, Safeco hand-delivered the February 24, 2010 check and the February 24, 2010 request for a release to Schretzmann's social worker at the James A. Haley Veterans' Hospital Traumatic Brain Injury Unit in Tampa, Florida.

37. Copies of the documents that Safeco hand-delivered to Schretzmann's social worker on March 22, 2010 are attached hereto as composite **Exhibit** 7.

38. On March 25, 2010, as a result of the efforts and expenditures by Schretzmann's family, LaVigne was appointed guardian of Schretzmann.

39. On March 31, 2009, counsel for LaVigne sent Safeco correspondence rejecting the tender of the $10,000.00 bodily injury limits which: (1) did not include the

additional claims expense required to establish the guardianship and (2) required a release of the property damage claim as well as the bodily injury claim. A copy of the March 31, 2009 letter to Safeco is attached hereto as **Exhibit 8.**

40. On April 22, 2010, Safeco attempted to tender the bodily injury liability limits and an inadequate amount that was less than its policy limits for property damages in exchange for releases of the same.

41. At the time of Safeco's April 22, 2010 offer to settle, Safeco also requested a copy of the invoice related to the establishment of the guardianship so that it could "give its consideration to payment of that invoice," while simultaneously denying any obligation to make such payment. A copy of the April 22, 2010 letter from Safeco is attached hereto as **Exhibit 9.**

42. On May 28, 2010, counsel for LaVigne rejected Safeco's April 22, 2010 offer. A copy of the May 28, 2010 letter to Safeco is attached hereto as **Exhibit 10.**

43. Safeco had the opportunity to tender the appropriate policy limits in exchange for a general release, but it failed to either fully or partially settle this matter on behalf of Pope when it could have and should have done so.

44. Safeco had the opportunity to obtain a settlement and release of all claims against Pope by retaining counsel to facilitate the settlement through a guardianship, but Safeco failed and refused to do so because it would cost more than $400.00.

45. Safeco's policy requires that it pay, on behalf of its insured, reasonable expenses incurred at Safeco's request.

46. Safeco's policy does not limit reasonable expenses incurred at Safeco's request to $400.00.

47. Four hundred dollars is not a reasonable amount for the establishment of a guardianship.

48. Safeco's request for Schretzmann to execute a release, when it knew that Schretzmann lacked the legal capacity to do so, constituted a request for Schretzmann or his family to incur the expenses associated with attaining a guardianship, so any release could be validly executed under Florida law.

49. When Safeco requested that Schretzmann execute a release, it knew that it was impossible for Schretzmann to do so absent the appointment of a guardian.

50. Safeco had the obligation to facilitate the settlement of all claims against Pope by expending claims expenses to establish a guardianship for Schretzmann, where Safeco routinely expends such claims expenses to facilitate settlements of claims against other insureds when claimants are without the legal capacity to effectuate such settlements.

51. Safeco failed and refused to expend such claims expenses to settle Schretzmann's claims against Pope, despite its practice of doing so for similarly situated insureds and claimants.

52. LaVigne, as guardian of Schretzmann, filed suit against Pope in the Circuit Court of the Third Judicial Circuit and for Columbia County, Florida, Case Number 10-560-CA (hereinafter, the "Underlying Case") for all damages arising out of the April 24, 2009 motor vehicle collision.

53. Pursuant to the Settlement Agreement, a final judgment was entered in the Underlying Case against Pope and in favor of LaVigne as guardian of Schretzmann in the amount of Five Million One Hundred Thousand Dollars ($5,100,000.00).

54. A copy of the final judgment is attached hereto as **Exhibit 11.**

55. Pursuant to the Settlement Agreement, LaVigne has obtained all of Pope's rights against Safeco, including Pope's right to attorney's fees under section 627.428, Florida Statutes, and is bringing this action in part pursuant to that assignment.

**COUNT I**
**BAD FAITH OF SAFECO**

LaVigne adopts the allegations contained in paragraphs 1 through 55 above as if fully set forth herein, and further alleges:

56. Pursuant to the Policy and Florida law, Safeco owed good faith duties to Pope, including but not limited to the following:

a. To use toward Pope the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his or her own business;

b. To exercise such control in handling the claim against Pope and in making decisions with regard to both settlement and litigation in good faith and with due regard for the interests of Pope;

c. To diligently investigate the claim against Pope;

d. To diligently evaluate the claim against Pope and the risk to Pope;

e. To initiate and effectuate settlement negotiations with Schretzmann's representatives;

f. To advise Pope of settlement opportunities and settlement offers;

g. To advise Pope as to the probable outcome of litigation;

h. To warn Pope of the possibility of an excess judgment and to advise Pope of any steps which she might take to avoid the same;

i. To investigate all of the facts and circumstances, and give fair consideration to a settlement offer that is not unreasonable under the facts and circumstances;

j. To settle, if at all possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so;

k. To settle the claim against Pope within Pope's policy limits when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward Pope and with due regard for Pope's interests;

l. To treat all claimants equally, including authorizing the expenditure of claims expenses to facilitate settlements of claims when claimants are without the legal capacity to effectuate such settlements;

m. To not provide favored treatment of some claimants over others;

n. To not approach the investigation or settlement of the claim in a manner that was prejudicial to Pope; and

o. To not attempt to negotiate with a claimant at a time that the claimant is, or reasonably would be expected to be, in shock or serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss.

57. The foregoing duties are fiduciary in nature and nondelegable.

58. Safeco is liable for the acts and omissions of its agents, employees and/or representatives in the handling of the claim against Pope.

59. Safeco, through its agents, employees and representatives, breached its duties of good faith owed to Pope by, including but not limited to:

a. Failing to timely and properly investigate the facts of the injuries to Schretzmann and his capacity to respond to any settlement offers;

b. Failing to timely and properly evaluate the claims against Pope;

c. Failing to effectuate settlement negotiations with Schretzmann's representatives;

d. Failing to settle the claims against Pope within the policy limits when it could and should have done so had it been treating its insured fairly and honestly and acting with due regard for the best interests of its insured, Pope;

e. Failing to fully and properly advise Pope of the status of settlement negotiations and the opportunities for settlement;

f. Refusing to expend reasonable claims expenses to establish a guardianship for Schretzmann so that the claims against Pope could be resolved and released in the manner required by Florida law;

g. Refusing to pay reasonable expenses incurred by Schretzmann at Safeco's request;

h. Failing to treat the claims of Schretzmann equally to similar claims by other claimants who are without the legal capacity to effectuate settlements,

in that Safeco routinely pays claims expenses to effectuate the settlement of claimants who are without the legal capacity to effectuate settlements, but Safeco refused to do so to effectuate the settlement of the claims against Pope;

i. Providing favored treatment to some claimants who are legally incapacitated over Schretzmann;

j. Advancing its own financial interests without due regard for Pope, by attempting to unreasonably minimize the amount to be paid to establish the guardianship needed to effectuate the settlement of the claims against Pope;

k. Repeatedly requesting and requiring a release of Schretzmann's property damages claims in exchange for only payment of Schretzmann's bodily injury claims;

l. Failing to tender the limits of property damage coverage to obtain at least a settlement of the property damages claims against Pope;

m. Attempting to negotiate a settlement with Schretzmann at a time that Safeco knew that he was comatose, in shock, or in serious mental or emotional distress as a result of physical, mental, or emotional trauma associated with a loss; and

n. Failing to otherwise perform the good faith duties set forth in paragraph 56, above.

60. As a result of Safeco's breaches of its duties of good faith and its failure to settle the claims against Pope when it could and should have done so, Pope has now had a final judgment in excess of $5,100,000.00, including legal interest, entered against her.

61. As a direct and proximate result of the above breaches of its duties of good faith by Safeco, LaVigne has retained the undersigned attorneys to bring this action and has agreed to pay them reasonable attorney's fees for their services.

62. LaVigne is entitled to recover reasonable attorney's fees for the services of her counsel in this action pursuant to section 627.428, Florida Statutes.

63. In addition to pursuing this action against Safeco pursuant to the assignment from Pope, LaVigne is entitled to pursue this action directly against Safeco, because Schretzmann is a third party beneficiary of the Policy by operation of Florida law, and can enforce Safeco's obligations to act in good faith toward its insured.

WHEREFORE, the plaintiff, ARLENE SCHRETZMANN LAVIGNE, as guardian of KURT SCHRETZMANN, and as assignee of LUCINDA ROSANA POPE, demands judgment against the defendant, SAFECO INSURANCE COMPANY OF ILLINOIS, for all damages, including but not limited to the principal amount of the judgment, the costs of this action, attorney's fees, interest, and further demands a trial by jury.

Respectfully submitted, this ***10th*** day of ***February***, 2017.

**ERNEST J. MYERS, ESQUIRE**
Florida Bar No.: 947350
Email: emyers@marcusmyerslaw.com
**LEE W. MARCUS, ESQUIRE**
Florida Bar No.: 967076
Email: lmarcus@marcusmyerslaw.com
MARCUS & MYERS, P.A.
1515 Park Center Drive, Suite 2G
Orlando, Florida 32835
Tel: 407-447-2550
Fax: 407-447-2551
Counsel for Plaintiff,
ARLENE SCHRETZMANN LAVIGNE